UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KENNETH MARTIN,

    Plaintiff,

v.                                                Case No. 8:22-cv-1813-AEP

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,[1]

    Defendant.
_____/

**ORDER**

Plaintiff seeks judicial review of the denial of his claim for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

**A.  Procedural Background**

Plaintiff filed an application for a period of disability, DIB, and SSI (Tr. 262, 264). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 161, 165, 171, 173, 187, 189, 197). Plaintiff

---

[1] Dr. Kilolo Kijakazi is now the Acting Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Acting Commissioner Kilolo Kijakazi should be substituted for Commissioner Andrew M. Saul as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

then requested an administrative hearing (Tr. 203). Per Plaintiff's request, the ALJ held a hearing at which Plaintiff appeared and testified (Tr. 42). Following the hearing, the ALJ issued an unfavorable decision finding Plaintiff not disabled and accordingly denied Plaintiff's claims for benefits (Tr. 34). Subsequently, Plaintiff requested review from the Appeals Council, which the Appeals Council denied (Tr. 1). Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B. Factual Background and the ALJ's Decision

Plaintiff, who was born in 1974, claimed disability beginning November 18, 2018[2] (Tr. 47). Plaintiff obtained a college education (Tr. 295). Plaintiff's past relevant work experience included work as a safety manager (Tr. 75, 295). Plaintiff alleged disability due to borderline personality disorder, major depressive disorder, anxiety disorder, and attention-deficit/hyperactivity disorder (ADHD) (Tr. 294).

In rendering the administrative decision, the ALJ concluded that Plaintiff met the insured status requirements through September 30, 2021 and had not engaged in substantial gainful activity since November 18, 2018, the amended alleged onset date (Tr. 26). After conducting a hearing and reviewing the evidence of record, the ALJ determined Plaintiff had the following severe impairments: spine disorders, peripheral neuropathy, left hand fourth finger amputation, and mental health disorders variously diagnosed as affective disorder, anxiety disorder, ADHD,

---

[2] Plaintiff originally alleged disability onset dates of both February 1, 2011 and June 1, 2011 but amended the alleged onset date at the administrative hearing to November 18, 2018 (Tr. 24, 47, 262, 264, 270).

posttraumatic stress disorder, and borderline personality disorder (Tr. 27). Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 27). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he is limited to no more than occasionally climbing ramps and stairs, balancing, stooping, kneeling, crouching, and crawling. He can never climb ladders, ropes, or scaffolds. He can have no more than occasional exposure to extreme temperatures, humidity, vibration and workplace hazards such as unprotected heights and moving machinery. He is limited to unskilled work. He is able to carry out detailed but uninvolved instructions in the performance of simple, routine tasks involving simple work-related decisions. Work must be in a low stress work environment and with no fast-paced production requirements and no more than occasional interaction with supervisors and co-workers. He is unable to perform tandem tasks with coworkers and can have no work-related interaction with the general public. He can have no more than occasional changes in the general nature of the work setting or the tasks to be performed.

(Tr. 29). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 30).

Considering Plaintiff's noted impairments and the assessment of a vocational expert ("VE"), however, the ALJ determined Plaintiff could not perform his past

relevant work (Tr. 33). Given Plaintiff's background and RFC, the VE testified that Plaintiff could perform other jobs existing in significant numbers in the national economy, such as an office cleaner (DOT 323.687-014, light, SVP 2), stock checker (DOT 299.667-014, light, SVP 2), and labeler (DOT 920.687-126, light, SVP 2) (Tr. 34). Accordingly, based on Plaintiff's age, education, work experience, RFC, and the testimony of the VE, the ALJ found Plaintiff not disabled (Tr. 34).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant

is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the

5

individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were

applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III.

Plaintiff argues that the ALJ erred by finding that Plaintiff did not qualify as disabled under the Listings. Specifically, Plaintiff argues that substantial evidence does not support the ALJ's finding that Plaintiff does not meet Listing 12.08 which governs personality and impulse-control disorders. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

At step 3 of the sequential evaluation, the claimant has the burden of proving that his impairment meets or equals a listed impairment. *Barron v. Sullivan,* 924 F.2d 227, 229 (11th Cir. 1991). The Listing of Impairments describes, for each of the major body systems, impairments considered severe enough to prevent an individual from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). The Listings were designed to operate as a presumption of disability that makes further inquiry unnecessary and thus require an impairment preventing an adult from performing *any* gainful activity rather than just substantial gainful activity. *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990). A diagnosis alone cannot meet the criteria required to establish that an impairment meets a Listing. 20 C.F.R. §§ 404.1525(d), 416.925(d). To "meet" a Listing, a claimant must have a diagnosis included in the Listings as well as medical reports documenting that the condition meets both the specific criteria of the Listings and the duration requirement. *Wilson*,

284 F.3d at 1224; see 20 C.F.R. §§ 404.1525, 416.925.[3] To prove she qualifies for a Listing, the claimant must provide "objective medical evidence from an acceptable medical source to establish that you have a medically determinable mental disorder." As part of that, this evidence remains subject to §§ 404.1520c, 404.1527, 416.920c, and 416.927, the rules governing the ALJ's evaluation of medical opinions, and §§ 404.1529 and 416.929, the rules governing the ALJ's consideration of subjective evidence of symptoms. 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

Section 12.00 of the Listings appendix within the SSA regulations contains the Listings for mental disorders, including Listing 12.08 which pertains to personality and impulse-control disorders. *See* 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2. A claimant meets Listing 12.08 when the ALJ finds that both paragraphs A and B requirements are met. Paragraph A requires the claimant show

> Medical documentation of a pervasive pattern of one or more of the following:
>
>   1. Distrust and suspiciousness of others;
>   2. Detachment from social relationships;
>   3. Disregard for and violation of the rights of others;
>   4. Instability of interpersonal relationships;
>   5. Excessive emotionality and attention seeking;
>   6. Feelings of inadequacy;
>   7. Excessive need to be taken care of;
>   8. Preoccupation with perfectionism and orderliness; or
>   9. Recurrent, impulsive, aggressive behavioral outbursts.

---

[3] To medically "equal" a Listing, on the other hand, the medical findings must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). Here, Plaintiff does not argue that his impairment medically equals Listing 12.08, only that the impairment meets the Listing.

8

20 C.F.R. § Pt. 404, Subpt. P, App. 1. In considering paragraph B, the ALJ evaluates how a claimant's mental impairments impact four broad functional areas, (the "paragraph B criteria"): (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3). In rating the degree of limitation, the SSA employs a five-point scale in considering the functional areas: none, mild, moderate, marked, and extreme. 20 C.F.R. §§ 404.1520a(c)(4), 416.920a(c)(4). To satisfy the paragraph B criteria, the mental disorder must result in "extreme" limitation of one, or "marked" limitation of two, of the four areas of mental functioning. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Pt. A2. When considering a claimant's mental impairments, the ALJ must incorporate into the written decision the pertinent findings and conclusions based on the technique and must make a specific finding as to the degree of limitation for each of the functional areas. *Moore*, 405 F.3d at 1213–14; 20 C.F.R. §§ 404.1520a(e)(4), 416.920a(e)(4).

      Here, the ALJ found that the "severity of [Plaintiff's] mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04, 12.06, 12.08, 12.11, or 12.15" (Tr. 27). While acknowledging Plaintiff has "some difficulties with interpersonal relationships and social functioning," the ALJ found that Plaintiff did not meet the paragraph A criteria (Tr. 27). The ALJ also found that Plaintiff did not meet the paragraph B criteria (Tr. 28). In understanding, remembering or applying information, the ALJ found Plaintiff

had a mild limitation (Tr. 28). In support, the ALJ considered that Plaintiff stated he is generally able to follow instructions and did not report any significant difficulties in this area (Tr. 28, 436). In interacting with others, the ALJ found Plaintiff had a moderate limitation (Tr. 28). The ALJ cited Plaintiff's reports of difficulties getting along with others, lack of engagement in social activities with friends, and panic attacks occurring in public as well as mental health treatment notes generally showing his mood was anxious and irritable (Tr. 28, 62–63, 65, 436, 493, 505, 515, 699, 714, 718, 732, 737, 741, 745, 764, 766). The ALJ found it persuasive, however, that Plaintiff has a supportive spouse and a stable marriage and that while he has not seen his parents in several years, he keeps in touch with them through telephone calls (Tr. 28, 432, 436). The ALJ also found it notable that none of his providers documented any difficulties with Plaintiff's interactions with them or their staff (Tr. 28). In concentrating, persisting or maintaining pace, the ALJ found Plaintiff had a moderate limitation because while he reported difficulties paying attention and staying on task, mental status evaluations generally showed concentration, orientation, and memory were intact (Tr. 28, 493, 505, 515, 699, 714, 718, 732, 737, 741, 745, 764, 766). Additionally, state agency consultants found Plaintiff's comprehension and concentration to be "excellent" (Tr. 86, 100, 118, 121, 142). In adapting or managing oneself, the ALJ found Plaintiff had a moderate limitation (Tr. 28). The ALJ acknowledged that he has difficulties with some activities outside the home including managing his behavior in public and struggles with stressful situations and changes in a routine (Tr. 28, 434, 436–37). However,

the ALJ again found it persuasive that Plaintiff has a stable marriage and a supportive spouse and is able to perform daily activities around the home and his own personal care (Tr. 28, 432–33, 435).

In reaching these conclusions, the ALJ was not persuaded by Dr. Cassidy's testimony at the hearing (Tr. 27). Dr. Cassidy testified that Plaintiff has a pervasive pattern in all paragraph A criteria and that Plaintiff had marked limitation in all paragraph B criteria and likely extreme limitations in concentration, persistence, or pace and adapting or managing oneself (Tr. 27, 57–58). The ALJ noted that Dr. Cassidy admitted he was unfamiliar with Listing 12.08 (Tr. 27, 56). It was only until after Plaintiff's representative read Dr. Cassidy the listing criteria that Dr. Cassidy was able to testify about them (Tr. 57). The ALJ noted that the medical evidence did not support Dr. Cassidy's testimony (Tr. 27). Of note, Dr. Cassidy testified that Plaintiff will "call our office and be maybe very mad at somebody or hang up the phone" but the ALJ stated that none of his providers documented any difficulties with Plaintiff's interactions with them or their staff (Tr. 28, 52). Elsewhere in the decision, the ALJ considered other statements made by Dr. Cassidy at the hearing regarding Plaintiff's functional limitations (Tr. 32–33, 51–54). Dr. Cassidy stated Plaintiff had a very difficult time interacting with others and tolerating stress, is aggressive and easily offended, has difficulty concentrating, and loses his train of thought easily (Tr. 32, 51–52). The ALJ found this unpersuasive (Tr. 32). The ALJ noted that while mental status examinations often showed anxious and irritable mood and tangential thought processes, memory, orientation, and concentration

were generally noted to be normal and intact (Tr. 32–33, 493, 505, 515, 699, 714, 718, 737, 741, 745, 766). Moreover, the ALJ considered that Dr. Cassidy noted that the Lamictal helped stabilize Plaintiff's mood and Plaintiff's other psychotherapists' notes repeatedly state Plaintiff was progressing with learning acceptance and coping skills (Tr. 33, 497, 546–47, 762–63). Meanwhile, the ALJ found that the State agency psychological consultants' opinions were persuasive (Tr. 28, 32). The ALJ stated that the evidence supported a finding that Plaintiff has limitations in social functioning, but it did not support a finding that he is unable to interact with others entirely (Tr. 32). The ALJ supported this with the evidence that Plaintiff had normal interactions with all of his providers, as well as a stable marriage (Tr. 32, 432–33, 435).

Later in the decision, the ALJ again considered Plaintiff's mental impairments. The ALJ noted Plaintiff's relevant treatment history, beginning in October 2018 when Dr. Eickleberry evaluated Plaintiff for complaints of anxiety, feeling overwhelmed, angry outbursts, uncontrollable crying, and confusion (Tr. 30, 765). The ALJ considered records from several providers including Tampa Bay DBT in November 2018, New Directions Counseling Center in December 2019, and Dr. Cassidy in June 2020 (Tr. 31, 493–507, 512–517, 546–47, 699, 707–36). The ALJ found that the evidence showed that while the treatment notes indicated continued complaints of anxiety, anger, and irritability, they also show generally intact concentration (Tr. 31, 505, 512, 514–15, 699, 718). And while there were some documented social difficulties, the record also indicated he was able to get

12

along well with all of his providers, his parents, and his spouse (Tr. 31, 436, 766). Moreover, the records showed no indication of a need for emergency treatment or hospitalization for psychiatric care (Tr. 32). Finally, the ALJ found it persuasive that Plaintiff continued working after his amended alleged onset date of November 18, 2018 (Tr. 32). The ALJ noted that Plaintiff reported working full time when he sought treatment with Dr. Cassidy in August 2019 (Tr. 32, 504). Additionally, in December 2020, Plaintiff reported having to quit work entirely, indicating he had been working in some capacity immediately prior to that date (Tr. 32, 737).

Plaintiff argues that the ALJ's decision that Plaintiff does not meet the Listing 12.08 criteria is not supported by substantial evidence. Before describing Plaintiff's arguments, the Court finds it necessary to note that the bulk of Plaintiff's brief consists of bare recitation of facts from the record that may be relevant to Plaintiff's borderline personality disorder but do not contain any argument (*see* Doc. 20, at 3–6). Instead, Plaintiff's two arguments take up roughly half of a page of the eight-page brief and are underdeveloped and unsupported by legal authority (*see* Doc. 20, at 6–7). On this basis, the Eleventh Circuit has authorized district courts to find such arguments waived. *Outlaw v. Barnhart*, 197 Fed. App'x 825, 828 n.3 (11th Cir. 2006) (noting that an issue was waived because the claimant did not elaborate on the claim or provide citation to authority about the claim); *N.L.R.B. v. McClain of Ga., Inc.*, 138 F.3d 1418, 1422 (11th Cir. 1998) ("Issues raised in a perfunctory manner, without supporting arguments and citations to authorities, are

generally deemed to be waived."). Despite such a cursory treatment of the issues presented, the Court will address each of Plaintiff's arguments.

First, Plaintiff notes that the State agency consultants did not have Plaintiff's diagnosis of borderline personality disorder or have treatment notes discussing this diagnosis from Dr. Cassidy (Doc. 20, at 6). Plaintiff states that borderline personality disorder "is a separate and distinct diagnosis and it cannot be presumed that their opinion regarding the B criteria would be the same, had they had additional treatment notes from Dr. Cassidy and included consideration of borderline personality disorder" (Doc. 20, at 6). Plaintiff notes that the only medical opinion available to the ALJ specific to Plaintiff's borderline personality disorder was Dr. Cassidy's (Doc. 20, at 6). Plaintiff argues that the State agency consultants did not consider the criteria pertaining to borderline personality disorder or have treatment notes discussing this diagnosis from Dr. Cassidy and that "it cannot be presumed that their opinion regarding the B criteria would be the same, had they had" this information (Doc. 20, at 6). However, the Court reviews the ALJ's decision, not the State agency's report. Even if the state agency medical consultant cannot review all of Plaintiff's medical records before rendering an opinion, the ALJ has access to the entire record, including Plaintiff's testimony, and can determine whether the opinion is supported by and consistent with the evidence of record and thus whether to afford the opinion great weight. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (finding that an ALJ did not afford undue weight to a non-examining doctor where the doctor cited several portions of the

record in support of her conclusions, and the ALJ, who makes the ultimate determination, had access to the entire record, including the claimant's testimony).

The ALJ did not rely solely on the State agency consultants' opinions in making her paragraph B findings; rather, the ALJ supported her findings with substantial record evidence. Specifically, in understanding, remembering or applying information, the ALJ found Plaintiff had a mild limitation because Plaintiff stated he is generally able to follow instructions and did not report any significant difficulties in this area (Tr. 28, 436) (stating he is "generally able to follow instructions")). In interacting with others and in adapting or managing oneself, the ALJ found Plaintiff had a moderate limitation because while Plaintiff reported of difficulties in getting along with others, Plaintiff has a supportive spouse, a stable marriage, and none of his providers documented any difficulties with Plaintiff's interactions with them or their staff (Tr. 28, 66, 432–33, 435, 436, 493, 497, 505, 515, 680, 699, 714, 718, 737, 741, 745, 766). Additionally, he performed daily activities around the house, and engaged in his own personal care (Tr. 28, 432–33, 435, 436). Moreover, Plaintiff himself stated that while his mental illness makes it difficult, he is an "extrovert and enjoy being around people" (Tr. 436). In concentrating, persisting or maintaining pace, the ALJ found Plaintiff had a moderate limitation because while he reported difficulties paying attention and staying on task, mental status evaluations generally showed concentration, orientation, and memory were intact (Tr. 28, 493, 505, 515, 699, 714, 718, 737, 741, 745, 764, 766).

Plaintiff states—without arguing its significance—that Dr. Cassidy's report is the only medical opinion relevant to borderline personality disorder (Doc. 20, at 6). Be that as it may, it is unclear how this is relevant given that the ALJ did consider Dr. Cassidy's notes, opinion, and the diagnosis of borderline personality disorder in making her decision. Plaintiff does not challenge the ALJ's reasoning in rejecting Dr. Cassidy's notes or opinions.

Second, Plaintiff argues that the ALJ's reasoning is flawed with respect to Plaintiff's abilities to interact with others.[4] Specifically, Plaintiff argues that "equating the ability to get along with medical providers and remain in a stable marriage, to the ability to interact in an employment environment on the [*sic*] sustained basis, demonstrates a misunderstanding of the condition" (Doc. 20, at 7). First, as the Commissioner notes, the ALJ did not equate Plaintiff's marriage or interactions with staff to an ability to interact in an employment environment on a sustained basis. The ALJ merely points to these facts in support of her reasoning that while Plaintiff has difficulties in interacting with others—as demonstrated by his reported panic attacks, anxiety, and irritability—Plaintiff also shows other traits which indicate these difficulties are only moderate, namely, his stable marriage, maintained relationship with his parents, and ability to interact with providers and

---

[4] Plaintiff briefly mentions the ALJ's RFC, arguing that the ALJ's reasoning is flawed in support of the "an ability to interact as described in the residual functional capacity" (Doc. 20, at 7). Given that this is the only mention of the RFC in the brief and the only issue listed is framed as one regarding the Listings, the Court presumes that this mention of the RFC is in error and should refer instead to the ALJ's analysis of the paragraph B category "interacting with others."

16

their staff (Tr. 28). Second, Plaintiff asks the Court to substitute its own judgment for that of the ALJ. Again, the task of this Court is to determine whether substantial evidence supports the ALJ's decision. *Winschel*, 631 F.3d at 1178. Here, the ALJ explained its reasoning and supported it with evidence in the record. Plaintiff does not dispute the accuracy of the evidence, nor does he cite any legal authority which would indicate this reasoning is somehow flawed. Plaintiff's mere disagreement with the ALJ's reasoning is not a basis for reversal.

## IV.

The Court finds the ALJ's decision that Plaintiff does not meet the Listing 12.08 criteria is supported by substantial evidence. As outlined above, the ALJ specifically considered whether Plaintiff met the Listing 12.08 criteria. The ALJ then supported her reasoning with record evidence. The task of this Court is not to reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178. The Court may only consider whether the ALJ's decision is supported by substantial evidence. Here, it is.

Accordingly, after consideration, it is hereby

ORDERED:

1. The decision of the Commissioner is AFFIRMED.

2. The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 8th day of August, 2023.

*[Signature]*

ANTHONY E. PORCELLI
United States Magistrate Judge

cc: Counsel of Record